UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGELA YUSUPOV-MILLEVOI
and JEREMY SEIDEL,

                                 Plaintiffs,              24 Civ. No. 830 (JGK) (GS)

           -against-                         OPINION & ORDER

KINGYUM TRANSPORTS LLC and
KERNADO O. THOMAS,

                                Defendants.
------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

The parties to this personal injury action disagree over whether Defendants are entitled to discovery concerning one Plaintiff's recent bladder cancer diagnosis. For the reasons that follow, Defendants' motion to compel this discovery (Dkt. No. 31) is **DENIED** and Plaintiffs' mirror-image motion for a protective order precluding such discovery (Dkt. No. 23) is **GRANTED**.

## BACKGROUND

This action arises from an automobile accident that took place on September 17, 2022 on I-695 in the Bronx. Plaintiffs Angela Yusupova-Millevoi and Jeremy Seidel ("Plaintiffs") allege that the car they were driving in was rear-ended by a commercial truck owned and operated by Defendants Kingyum Transports LLC and Kernado O. Thomas ("Defendants"). (Dkt. No. 1 Ex. A ("Comp."); Dkt. No. 23 at 1). Seidel, the driver of the car, and Yusupova-Millevoi, a passenger, both allege extensive physical and cognitive injuries. (Comp. ¶ 28; Dkt. No. 31 Ex. 2 at 5-29).

Plaintiffs originally brought suit in Bronx Supreme Court on September 28, 2023; Defendants removed the action to this Court on February 5, 2024. (Dkt. No. 1 & Comp.). On April 2, 2024, Defendants served their First Set of Interrogatories and First Request for Production of Documents upon Plaintiffs. (Dkt. No. 31 at 1 & Ex. 1). Interrogatory No. 14 asked that Plaintiffs: "State the date(s) Plaintiffs received treatment at any hospital, out-patient department or clinic with the name and address of each such hospital or clinic." (Dkt. No. 31 at 1 & Ex. 1 at 3).

Plaintiffs responded to Defendants' discovery requests on April 4, 2024, and supplemented their responses on May 3, 2024. (Dkt. No. 31 Exs. 2-3). Plaintiff Seidel was deposed on May 14, 2024. (Dkt. No. 35 at 2). Discovery closed on January 31, 2025. (Dkt. No. 17). Following an unsuccessful mediation held on April 21, 2025, the parties are currently in the midst of briefing motions for summary judgment before the Honorable John G. Koeltl. (Dkt. Nos. 21-22, 29, 32-34).

After the mediation, Defendants served Plaintiffs with additional discovery demands dated April 21, 2025. (Dkt. No. 31 Ex. 4). These demands were precipitated by Defendants' discovery of a "GoFundMe" page on which Seidel solicited financial assistance for bladder cancer treatment and surgery. (Dkt. No. 24 at 1). Defendants' new demands include a Second Request for Production of Documents, seeking a HIPAA authorization in relation to Seidel's bladder cancer diagnosis, treatment, and surgery, and a Notice of Deposition for Seidel's testimony on this subject. (Dkt. No. 31 Exs. 4-5).

On April 25, 2025, Plaintiffs submitted a letter to Judge Koeltl contending they were entitled to a protective order against Defendants' new discovery demands. (Dkt. No. 23). Defendants responded that same day, contending that Seidel's bladder cancer condition and diagnosis "is of direct relevance to his claims in this matter." (Dkt. No. 24 at 1). The undersigned, to whom this discovery dispute has been referred by Judge Koeltl (Dkt. No. 26), held a discovery conference on May 7, 2025, and requested additional letter briefs from the parties. (*See* Dkt. Entry dated May 7, 2025).

Defendants filed their letter brief, in the form of a motion to compel discovery, on May 16, 2025. (Dkt. No. 31). Defendants argue that Plaintiffs were required to disclose Seidel's bladder cancer condition and hospitalization in response to Defendants' Interrogatory No. 14. (*Id.* at 1-2). Defendants also elaborate on their argument as to why medical records relating to Seidel's bladder cancer condition and treatment are relevant and discoverable and why they should be entitled to a second deposition of Seidel on this subject. (*Id.* at 2-3).

Plaintiffs filed their letter brief on May 23, 2025, along with a declaration from Seidel. (Dkt. No. 35 & Ex. A ("Seidel Decl.")). In his declaration, Seidel states that he saw a physician in January 2025 after noticing a small amount of blood in his urine. (Seidel Decl. ¶ 4). A small mass, considered to be a possible tumor, was identified, and the tumor was subsequently removed in February 2025. (*Id.* ¶¶ 4-5). Seidel then underwent a course of optional enzyme treatment, although he was advised that a full course of treatment "was not absolutely necessary." (*Id.* ¶

3

6). Seidel states that he "suffered no additional pain and suffering as a result of this medical incident and the matter is fully resolved." (*Id.* ¶ 7). Seidel also affirms that he is not making any claim that his bladder cancer condition was related to or exacerbated by the 2022 automobile accident. (*Id.* ¶ 8). Relying on Seidel's declaration, Plaintiffs argue that Seidel's bladder cancer diagnosis and treatment "is clearly and wholly unrelated to the traumatic injuries suffered by Mr. Seidel" in the automobile accident. (Dkt. No. 35 at 1-2).

## LEGAL STANDARD

### A. Discoverable Information Under Rule 26(b)

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating what information is discoverable, the Court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The information sought need not be admissible at trial to be discoverable. *Id.*

Relevance is "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on[,]' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, (WHP) (JCF),

2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016). "To satisfy this standard, 'the moving party must articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case.'" *Ekstein v. Polito Assocs. LLC*, No. 20 Civ. 1878 (JCM), 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022) (quoting *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16 Civ. 2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018)) (cleaned up).

The party moving to compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Sportvision*, 2022 WL 2817141, at *1.

### B. Reopening Discovery

Although the parties do not characterize it as such, Defendants' motion to compel discovery is effectively a motion to reopen discovery, which closed at the end of January. "As a general rule, courts have discretion to re-open discovery when there is good cause." *Nike, Inc. v. StockX LLC*, No. 22 Civ. 9083 (VEC) (SN), 2023

5

WL 5181099, at *1 (S.D.N.Y. Aug. 11, 2023). In deciding whether to reopen discovery, courts consider a number of factors, including "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).

In addition, when a party has violated its discovery obligations under Rule 26, one available remedy is to reopen discovery in order to cure any prejudice to its adversary resulting from the violation. *See, e.g.*, *Rekor Sys., Inc. v. Loughlin*, No. 19 Civ. 7767 (LJL), 2022 WL 2063857, at *10 (S.D.N.Y. June 8, 2022); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 125 (S.D.N.Y. 2018).

## DISCUSSION

The Court first addresses (1) whether Plaintiffs violated their discovery obligations by not disclosing Seidel's bladder cancer diagnosis and treatment and then examines (2) whether good cause exists to reopen discovery on this subject.

### A. Plaintiffs Did Not Violate Their Discovery Obligations

Relying vaguely on "Rule 26," Defendants argue that Plaintiffs should have disclosed Seidel's bladder cancer diagnosis and treatment in response to Defendants' Interrogatory No. 14. (Dkt. No. 24 at 1; Dkt. Nos. 31 at 1-2). To the

extent Defendants fault Plaintiffs for not including in either their initial or supplemental responses to Defendants' Interrogatories any mention of this medical condition (*see id.* at 2 ("In neither response did Seidel provide any dates or facilities of treatment in connection with his bladder cancer[.]")), that contention is chronologically defective.  Plaintiffs provided their initial and supplemental responses to Defendants' Interrogatories in April and May 2024 (Dkt. No. 31 Exs. 2-3), well before Seidel was diagnosed with possible bladder cancer in January 2025 (Seidel Decl. ¶ 4).  Seidel could not have disclosed a condition of which he was unaware in April and May 2024.

Defendants also fault Seidel for "[n]ever provid[ing] a follow-up response" to Interrogatory No. 14 disclosing his bladder cancer condition.  (Dkt. No. 31 at 2). The Court assumes this contention rests on a party's obligation to supplement its discovery responses under Fed. R. Civ. P. 26(e).  That rule requires a party who has responded to, *inter alia*, an interrogatory or document request to supplement or correct its response in a timely manner "if the party learns that in some material respect the . . . response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A). "'Information is "incomplete or incorrect" in "some material respect" if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation.'"  *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011) (quoting *Sender v. Mann*, 225 F.R.D. 645, 653–54 (D. Colo. 2004)).

Defendants argue that "[b]y its express terms," Interrogatory No. 14 required

7

Seidel to identify "all instances where he received medical treatment" and "was in no way limited only to treatment of conditions that were direct sequelae to the accident." (Dkt. No. 31 at 1). Plaintiffs, by contrast, characterize Interrogatory No. 14 as a "generic request for medical provider identification" that is "implicitly related to the plaintiff's September 17, 2022 injuries and their sequalae." (Dkt. No. 35 at 2). Otherwise, Plaintiffs contend, "such a broad and open-ended request could correctly be deemed overbroad and irrelevant." (*Id.*).

The Court agrees with Plaintiffs that, read in context, Interrogatory No. 14 is reasonably understood as limited to treatment for injuries sustained in the automobile accident in question. The surrounding Interrogatories, including Nos. 10, 11, 12, 13, 15, 16, and 17, all ask about Plaintiffs' injuries as a result of "the occurrence," meaning the accident. (Dkt. No. 31 Ex. 1 ¶¶ 10-13, 15-17). It is hard to discern why Defendants would have expanded the scope of their inquiry for one interrogatory alone. And in their document requests, Defendants asked for HIPAA authorizations only for "the current motor vehicle accident" and "prior motor vehicle accidents." (*Id.* at 5). They did not ask for HIPAA authorizations (or any other documents) relating to all medical treatment Plaintiffs have received.

Notably, Interrogatory No. 14 itself asks for each date Plaintiffs "received treatment," along with the name and address of each hospital or clinic where the treatment was provided, but does *not* ask what condition the Plaintiff was treated for. That omission would seem to make sense only if Interrogatory No. 14 was meant to refer to treatment related to the accident; otherwise, the response would

8

be fairly meaningless. Similarly, Defendants' Interrogatories have no date restriction. If Interrogatory No. 14 is to be read literally, as Defendants now insist, that would mean that Plaintiffs were required to identify *any* past treatment at a hospital, out-patient department or clinic, even for a bout of appendicitis or a sprained finger twenty years earlier. That, too, would not be a sensible interpretation.

Further, as described in the Seidel Declaration, and discussed further below, there is no reason to believe, and Seidel does not claim, that his bladder cancer diagnosis was related to his injuries from the 2022 automobile accident. Thus, Plaintiffs could have reasonably concluded that Seidel's diagnosis did not render their prior responses to Interrogatory No. 14 "incomplete or incorrect" in "some material respect" under Fed. R. Civ. P. 26(e)(1)(A).

Under these circumstances, the Court cannot conclude that there is "an objectively reasonable likelihood" that Plaintiffs' disclosure of Seidel's bladder cancer diagnosis could "substantially affect or alter [Defendants'] discovery plan or trial preparation." *See Robbins & Myers, Inc.*, 274 F.R.D. at 77. Thus, Defendants have failed to show that, by not supplementing their response to Interrogatory No. 14 to describe Seidel's bladder cancer diagnosis, Plaintiffs violated their obligations under Fed. R. Civ. P. 26(e)(1)(A).

### B.  Good Cause Does Not Exist to Reopen Discovery

Nor does the Court find that Defendants have shown good cause for reopening discovery to explore Seidel's bladder cancer diagnosis and treatment.

Some factors do weigh in Defendants' favor: no trial date has been set; Defendants cannot be said to have lacked diligence; and Seidel's bladder cancer condition was not foreseeable. Moreover, while the burden on Seidel in providing a HIPAA authorization for medical records relating to his bladder cancer condition and in sitting for an additional deposition is not inconsiderable, the prejudice to Plaintiffs if discovery were reopened as to this one issue is relatively modest.

Nonetheless, the remaining factor—whether the additional discovery will likely lead to relevant evidence—weighs heavily and decisively against reopening discovery. The Court is persuaded by Plaintiffs' argument, supported by Seidel's sworn declaration, that Seidel's bladder cancer diagnosis and treatment is unrelated to Seidel's claimed injuries and damages resulting from the automobile accident at issue. Those claimed injuries include, as of the time of Plaintiff's initial interrogatory responses in April 2024, cognitive injuries including concussion, depression, and post-traumatic confusion and anxiety; injuries to Seidel's left shoulder (which was operated on in May 2023), right shoulder, left wrist, hand, forearm, leg, and jaw; and lumbar, thoracic and cervical spinal injuries. (Dkt. No. 31 Ex. 2 at 19-28). Seidel also claims post-traumatic shock, fatigue, and chronic pain, myofascial pain, body stiffness, and 100% disability. (*Id.* at 28-29). The Court fails to perceive how Seidel's subsequent bladder cancer diagnosis, some eights month later, has any bearing on these alleged injuries. Moreover, according to Seidel's declaration, he received immediate treatment for the possible bladder cancer and the matter is now fully resolved. (Seidel Decl. ¶¶ 5-7).

Defendants argue that Seidel's bladder cancer treatment and surgery "directly relate to" his injury claims, "impacting his quality of life and likely causing body pain to significant degrees," and that his psychological and neuropsychological conditions are "also subject to being negatively impacted by his bladder cancer diagnosis and treatment." (Dkt. No. 31 at 2). But these arguments are speculative, conclusory, and unsupported by any evidence or medical authority. They are also squarely contradicted by Seidel's declaration, which, among other things, states that Seidel suffered "no additional pain and suffering" as a result of the bladder cancer incident. (Seidel Decl. ¶ 7).

Citing three New York State cases, Defendants also argue that Seidel has "affirmatively put[] essentially his entire medical condition in issue through the broad allegations of physical injuries and sequalae" and that, as a result, all his medical treatment records are discoverable. (Dkt. No. 31 at 2-3). But the cases upon which Defendants rely do not go so far. In two of the cases, the courts ordered discovery of *pre-existing* medical conditions that might reasonably be thought to contribute to the plaintiff's claimed impairments. *See Amoroso v. City of N.Y.*, 66 A.D.3d 618, 887 N.Y.S.2d 163 (2d Dep't 2009); *Diamond v. Ross Orthopedic Grp., P.C.*, 41 A.D.3d 768, 839 N.Y.S.2d 211 (2d Dep't 2007). Here, Defendants seek discovery of a *subsequent* condition that is unrelated to the injuries Seidel claims.

In the third case, where the plaintiff claimed "brain damage, an inability to perform activities of daily living without assistance, and a loss of enjoyment of life," the court found that records of psychological treatment "received prior to or

11

subsequent to the date of the alleged malpractice" could be relevant for accurately assessing plaintiff's damages. *See Montalto v. Heckler*, 113 A.D.3d 741, 742, 978 N.Y.S.2d 891 (2d Dep't 2014). There is no such logical connection between the injuries claimed by Seidel here and his recent bladder cancer diagnosis and treatment.

It is well established under New York law that "a party does not waive the physician-patient privilege with respect to unrelated illnesses or injuries[.]" *Fitzpatrick v. Consol. Resistance Co. of Am., Inc.*, 205 A.D.3d 773, 774, 165 N.Y.S.3d 878, 879 (2d Dep't 2022); *accord, e.g.*, *Romance v. Zavala*, 98 A.D.3d 726, 728, 98 950 N.Y.S.2d 390, 391–92 (2d Dep't 2012); *Del Gallo v. City of N.Y.*, No. 107409/11, 2014 WL 2745696, at *2 (N.Y. Sup. Ct., N.Y. Cnty. June 17, 2014). Thus, "'[t]he waiver of the physician-patient privilege made by a party who affirmatively asserts a physical condition in its pleading does not permit discovery of information involving unrelated illnesses and treatments.'" *DiFrancesco v. Win-Sum Ski Corp.*, No. 13 Civ. 148, 2017 WL 696838, at *6 (W.D.N.Y. Feb. 22, 2017) (quoting 44 N.Y. Jur. *Disclosure* § 121, at n.22 (2016)); *see also Watt v. AvalonBay Cmtys., Inc.*, No. 22 Civ. 7671 (JMW), 2023 WL 5179634, at *3 (E.D.N.Y. Aug. 11, 2023) ("Putting one's medical condition at issue is generally not considered a 'wholesale' affair.").

As a result, courts will deny discovery relating to a plaintiff's other medical conditions where the defendant "fails to connect the dots" by demonstrating a connection between those conditions and the plaintiff's claimed injuries. *Watt*, 2023 WL 5179634, at *4 (denying defendant's discovery request where "Defendant has

failed to show how Plaintiff's spinal treatment is related to her alleged injuries of a broken femur or her hip pin"); *see also DiFrancesco*, 2017 WL 696838, at *7 (denying discovery as to "the plaintiff's subsequent condition and treatment for an apparently unrelated injury"); *Kenneh v. Jey Livery Serv.*, 131 A.D.3d 902, 903, 16 N.Y.S.3d 726 (1st Dep't 2015) ("The motion court providently exercised its discretion in determining that plaintiff did not place his diabetic condition in issue by asserting those serious injury claims [resulting from a motor vehicle accident], or by alleging that he continued to suffer anxiety and other symptoms following the accident[.]"); *Del Gallo,* 2014 WL 2745696, at *3 (denying discovery where plaintiff's claimed "extensive and severe" injuries "do not encompass any gynecological conditions or sequelae, and defendants produce no testimony or other evidence connecting plaintiff's gynecological treatment to the accident or to the injuries sustained in the accident").

Defendants have similarly failed to connect the dots here.  There is not a sufficient basis to believe that discovery as to Seidel's bladder cancer condition would yield relevant and probative evidence bearing on his claimed injuries from the accident.  Consequently, Defendants have not shown good cause sufficient to justify reopening discovery, and their motion to compel discovery must be denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel discovery as to Plaintiff Seidel's bladder cancer condition is **DENIED**, and Plaintiffs' motion for a

protective order precluding such discovery is **GRANTED**.  The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 24 and 31.

    **SO ORDERED.**

DATED:   New York, New York
              May 28, 2025

                                                    _____
                                                    The Honorable Gary Stein
                                                    United States Magistrate Judge